AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Columbia   ▾

| | |
|---|---|
| United States of America<br>v.<br>Avtandil Kalandadze<br>DOB: ▮▮▮▮ | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 1:26-mj-000003
Assigned To: Judge Faruqui, Zia M.
Assign. Date: 1/12/2026
Description: COMPLAINT W/ARREST WARRANT

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   Nov. 2025 through Dec. 10, 2025   in International Waters   and the

the extraterritorial jurisdiction of the United States and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2237 | Failure to heave to, obstruction of boarding, or providing false information |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

▮▮▮▮▮▮▮▮▮▮▮▮

*Complainant's signature*

▮▮▮▮ Special Agent FBI and ▮▮▮▮ Special Agent HSI

*Printed name and title*

Sworn to before me and signed in my presence.

Date:   January 12, 2026

City and state:   Washington D.C.

*Judge's signature*

United States Magistrate Judge Zia M. Faruqui

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

AVTANDIL KALANDADZE,

Defendant.

Case: 1:26-mj-000003
Assigned To: Judge Faruqui, Zia M.
Assign. Date: 1/12/2026
Description: COMPLAINT W/ARREST WARRANT

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, ███████, Special Agent with the Federal Bureau of Investigation and Brent Talaga, Special Agent with the Homeland Security Investigations, being first duly sworn, hereby depose and state as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

I, ███████, have been a Special Agent with the FBI since April 2006 and am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws. Since I started working for the FBI, I have been involved in national security investigations. Specifically, I have been involved in investigations involving counterintelligence, export and sanctions violations, and counterproliferation. During my work with the FBI, I have executed, or participated in the execution of, search warrants and have seized evidence of criminal violations. I have conducted and participated in other investigations related to violations of U.S. export laws and regulations and sanctions violations. I have been involved in investigations involving the illegal export of controlled items, as well as investigations involving the illegal use of the U.S. financial system to facilitate petroleum sales for the benefit of the Government of Iran and other designated entities.

I, ████████, am a Special Agent with Homeland Security Investigations and have been employed in this capacity since 2009. I am currently assigned to the Counter Proliferation Unit in New York, New York. As a Special Agent, I have experience investigating cases involving U.S. arms export laws and regulations, the Foreign Corrupt Practices Act ("FCPA"), money laundering, and the illegal structuring of financial transactions. During the course of my career, I have received training and gained experience in interview and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various criminal laws and procedures. I have conducted or participated in surveillances, worked with cooperating witnesses, executed arrest and search warrants, debriefed informants and reviewed taped conversations. Through my training, education, and experience, I have become familiar with the manner in which various federal offenses can be committed. In addition, I have been the affiant on federal arrest warrant and search warrant applications.

This affidavit is being submitted in support of a criminal complaint alleging that Avtandil Kalandadze (the Master of the BELLA 1) and Oleksandr Razskovsky (the Chief Officer of the BELLA 1) engaged in conduct in violation of 18 U.S.C. § 2237 (Failure to heave to, obstruction of boarding, or providing false information).

This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, court-authorized searches, and my training and experience, as well as the training and experience of other law enforcement agents. Where the content of records and the actions, statements, and conversations of others are reported, they are reported in substance and in part, except where otherwise indicated.

Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me

2

concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause that Avtandil Kalandadze and Oleksandr Razskovsky violated 18 U.S.C. § 2237 (Failure to heave to, obstruction of boarding, or providing false information).

## II.    JURISDICTION AND VENUE

Jurisdiction and Venue is proper in this district because the trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the District of Columbia if an indictment or information is filed in such district and the defendant have no last known residence in any other district. *See* 18 U.S.C. §§ 3238, 3231.

## III.    STATUTES

### Failure to Heave To, Obstruction of Boarding, or Providing False Information

Title 18, United States Code, Section 2237(a)(1) prohibits the master, operator, or person in charge of "a vessel subject to the jurisdiction of the United States" from knowingly failing to obey an order by an authorized Federal law enforcement officer "to heave to." Title 18, United States Code, Section 2237(a)(2) prohibits any person on board a vessel subject to the jurisdiction of the United States from (a) forcibly resisting, opposing, preventing, impeding, intimidating, or interfering with a boarding or other law enforcement action authorized by any Federal law or to resist a lawful arrest; or (b) providing materially false information to a Federal law enforcement officer during a boarding of a vessel regarding the vessel's destination, origin, ownership, registration, nationality, cargo, or crew.

Several of the maritime terms included in the language of the statute are defined directly or by reference in the section. The term "heave to" means to cause a vessel to slow, come to a stop, or adjust its course or speed to account for the weather conditions and sea state to facilitate a law

3

enforcement boarding. The term "vessel subject to the jurisdiction of the United States" includes, in relevant part, a vessel without nationality (*i.e.*, a stateless or flagless vessel).

## IV.    FACTS IN SUPPORT OF PROBABLE CAUSE

### The BELLA 1 and the Warrant to Seize

The M/T BELLA 1 (IMO 9230880) is a crude oil tanker built in 2002. At the time if the Coast Guard's initial attempt to board the vessel, it claimed to fly the flag of Guyana, but according to information received from Guyana, the vessel was not legitimately flagged by the country. Thus, at the time of the initial attempt to board, it was flying a false Guyanese flag. Further, since at least in or around May 2024, several news organizations reported that an unauthorized entity was falsely registering Iran-linked vessels under the Guyana flag as an obfuscation tactic (as described further below). *See* https://www.lloydslist.com/LL1149046/Guyana-raises-rogue-registry-warning-as-sanctioned-tankers-falsely-fly-its-flag (Guyanese maritime authority tells United Against Nuclear Iran that more than a dozen tankers linked with Iran were fraudulently registered under its flag by an unauthorized entity). The same scenario appears to have been present in the instant voyage involving the BELLA 1.

The BELLA 1 has a history of exporting crude oil from and for the benefit of Venezuela and Iran, including entities that are the target of U.S. sanctions. Between in or around September 2022, and in or around September 2025, the BELLA 1 loaded approximately 11.8 million barrels of Iran-origin crude oil – worth hundreds of millions of dollars – from Kharg Island, Iran, most recently in or around August 2025. During this trade in Iran- and Venezuela-origin crude oil, the BELLA 1 has employed known sanctions evasion techniques, including spoofing its Automatic

4

Identification System ("AIS"),[1] engaging in ship-to-ship transfers to conceal the origin of crude oil, and flying false flags.

Based on the historical conduct of the BELLA 1, on or about December 17, 2025, the Honorable G. Michael Harvey, U.S. Magistrate Judge for the United States District Court for the District of Columbia issued a seizure warrant for the vessel (25-sz-56) (the "Seizure Warrant").

### The Current Voyage of the BELLA 1

Beginning in or around November 2025, the BELLA 1 entered the Western Hemisphere *en route* to Venezuela, where it likely was heading to load crude oil from the José Terminal, which is owned and operated by Petróleos de Venezuela, S.A. ("PdVSA") and its subsidiaries. PdVSA is the Venezuelan state-owned oil company, which was designated by the Department of the Treasury in January 2019 as a sanctions target pursuant to E.O. 13850. According to OFAC, PdVSA is a primary source of Venezuela's income and foreign currency (including U.S. dollars) and "has long been a vehicle for corruption," allowing the Maduro regime to embezzle billions of dollars from PdVSA for the personal gain of corrupt Venezuelan officials and businessmen. *See* https://home.treasury.gov/news/press-releases/sm594.

On or about December 10, 2025, the United States effected the seizure of the M/T SKIPPER, another so-called ghost fleet tanker engaged in the transport of crude oil from and for the benefit of Venezuela and Iran, including entities that are the target of U.S. sanctions. Immediately following the unopposed seizure of the SKIPPER, the BELLA 1 ceased its voyage to Venezuela, loitering in the area to the east of Antigua and Barbuda.

---

[1] AIS is a tool used to broadcast vessel position, vessel identity, and other critical information to nearby vessels and maritime authorities.

At or around 7:15 PM Eastern Time on or about December 20, 2025, the United States Coast Guard Cutter Munro ("USCGC Munro") – armed with the Seizure Warrant – engaged the BELLA 1. Consistent with international law, at or around 7:50 PM Eastern Time, the Coast Guard conducted a "right of approach," activating the USCGC Munro's searchlights and blue law enforcement lights and asking customary questions to the BELLA 1.

As part of the right of approach, Coast Guard personnel on the USCGC Munro requested for the Master of the BELLA 1 to confirm the vessel's flag state/nationality. In response, the Master verbally claimed Guyanà as the flag state. Based on information provided by the maritime authority of Guyana, this claim was false. As a result of the false claim of nationality, under customary international law, the vessel was determined to be without flag.

At or around 8:40 PM Eastern Time, Coast Guard personnel on the USCGC Munro requested that the BELLA 1 set on a southwest heading until the claim of nationality could be confirmed. The Master of the BELLA 1 replied with a verbal claim that he would follow the request. However, approximately 45 minutes following this request, the BELLA 1 began on a due east heading. At this point, the USCGC Munro hailed the BELLA 1 via radio, but the BELLA 1 did not respond.

At or around 5:30 AM Eastern Time on or about December 21, 2025, Coast Guard personnel on the USCGC Munro hailed the BELLA 1 – which was on a northeast heading – over radio, advising the vessel that Guyana denied the Master's claim of nationality and that the United States was exerting jurisdiction over the BELLA 1 in accordance with international law. The USCGC Munro instructed the vessel to proceed on a west/southwest heading, which the BELLA 1 ignored. The USCGC Munro continued to follow the BELLA 1.

6

At or around 6:30 AM Eastern Time, the USCGC Munro received a digital selective calling ("DSC") distress alert from the BELLA 1, with the BELLA 1 claiming that it was under pirate attack, the crew was moving to the BELLA 1's citadel, and that the BELLA 1 was operating under blind navigation. The USCGC Munro acknowledged the BELLA 1's distress call and offered to assist, despite there being no signs of distress or other vessels within visual or radar range.

With the BELLA 1 remaining noncompliant and not responding to radio hails, the USCGC Munro continued radio hails of the vessel at 30-minute intervals and hoisted flag code "SIERRA QUEBEC," which – per the International Code of Signals ("ICS")[2] – is the signal for, "You should stop or heave to." *See* https://www.dco.uscg.mil/Portals/9/NMC/pdfs/examinations/Pub102_2020.pdf.    The USCGC Munro remained in pursuit of the BELLA 1.

On December 30, 2025, the Honorable Matthew J. Sharbaugh, U.S. Magistrate Judge for the United States District Court for the District of Columbia issued a renewal on Seizure Warrant for the vessel (25-sz-56).

### Statement by the Crew of the BELLA 1

On or about January 7, 2025, the United States boarded the BELLA 1 in the northern Atlantic Ocean. Shorty after the boarding, ten members of the crew that identified themselves as "Members of the Engine Department" on the BELLA 1 provided an unsolicited, pre-prepared written statement to members of the United States Coast Guard. The statement was signed and dated December 21, 2025.

---

[2] The ICS is a standardized system of flags, lights, sounds, and radio messages used by vessels for crucial communication, especially when language barriers exist, focusing on safety of navigation and personnel.

In the statement, the crew members stated that, at the time of the Coast Guard's attempted boarding of the BELLA 1 on or about December 21, 2025, the Master and the "Cargo Security Officer" (since identified as the Chief Officer) provided false information to the remainder of the crew, telling the crew that the vessel was under "pirate attack" and ordering the crew to the vessel's citadel. According to the crew, "At no point during that time were we informed that the vessel was in fact being pursued or intercepted by state naval or coast guard forces in the context of law-enforcement or sanctions-related actions" (spelling and punctuation appear as in original).

The statement further alleges that the crew was forced to comply with orders from the Master and the "Cargo Security Officer," saying in their statement that explicit instructions were given that "refusal to comply with orders, continued objections, or insistence on sign-off" could result in consequences, including non-payment of wages and denial of repatriation to crew members' home countries.

Finally, the statement said, "All strategic, navigational, security-related, and operation decisions concerning the employment of the vessel…were taken exclusively by the Master of the vessel, Cargo Security Officer, and the ship-owning and/or operating company."

According to a crew manifest found onboard the BELLA 1, Avtandil Kalandadze was listed as the Master of the BELLA 1 and Oleksandr Razskovsky was listed as the Chief Officer of the BELLA 1. Both individuals were found onboard the BELLA 1 at the time of the boarding, and law enforcement personnel who boarded the BELLA 1 confirmed with other members of the crew that the Cargo Security Officer referenced in the written statement is the Chief Officer.

* * *

8

Based on the foregoing, I submit that there is probable cause to believe that Avtandil Kalandadze and Oleksandr Razskovsky: (1) knowingly failed to obey repeated orders by an authorized Federal law enforcement officer to heave to the USCGC Munro, in violation of 18 U.S.C. § 2237(a)(1), and (2) provided materially false information – that is, a false claim of nationality – to a Federal law enforcement officer during a boarding of the BELLA 1, in violation of 18 U.S.C. § 2237(a)(2).



Special Agent
Federal Bureau of Investigation

Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 12th day of January 2026.

HON. ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

AVTANDIL KALANDADZE

Defendant

:    CASE NO.

:

:

:

:

:    Filed Under Seal

:

:

:

## GOVERNMENT'S MOTION TO SEAL COMPLAINT AND RELATED DOCUMENTS

The United States of America, moving by and through its undersigned counsel, respectfully moves the Court for an Order placing the above-captioned warrant, complaint, and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively herein the "Arrest Warrant") under seal. In support of this motion, the government states:

1. The Court has the inherent power to seal court filings when appropriate, including the Arrest Warrant. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Arrest Warrant to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Arrest Warrant. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

2. On January 12, 2026, the government applied for an Arrest Warrant in this matter. The Arrest Warrant details the facts supporting probable cause to believe that AVTANDIL KALANDADZE, violated 18 U.S.C. § 2237 (Failure to heave to, obstruction of boarding, or providing false information).

3.     The government will continue its investigation after execution of the Arrest Warrant, and disclosure of the Arrest Warrant would jeopardize the investigation by providing the subjects of the investigation an opportunity to destroy evidence or flee and jeopardize the investigation by disclosing the details of facts known to investigators, the identities of witnesses, and the investigative strategy.

4.     In addition, the government respectfully moves for the Complaint and Arrest Warrant to remain sealed -- with the exception that the Government be permitted to disclose the Arrest Warrant to (1) appropriate U.S. and foreign law enforcement officials and other officials and personnel to the extent that such disclosure is in furtherance of national security or efforts to locate, arrest, detain, transfer, extradite, or expel the defendant, and (2) the court, court officials, and defense counsel in this district or any other appropriate district as necessary to conduct any court proceedings in that district.

5.     For the foregoing reasons, the government respectfully requests that the Arrest Warrant be sealed until further order of this Court, except as necessary to facilitate the enforcement of criminal law, including the execution of the Arrest Warrant, or to any federal official to assist the official receiving the information in the performance of that official's duties.

3

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

Date: January 12, 2026

By: /s/ Rajbir Datta
    RAJBIR DATTA
    Assistant United States Attorney
    N.Y. Bar 5206073
    National Security Section
    United States Attorney's Office
    601 D Street NW
    Washington, D.C. 20530
    Telephone: (202) 252-7687
    Email: rajbir.datta@usdoj.gov

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case: 1:26-mj-000003 |
| | : | Assigned To: Judge Faruqui, Zia M. |
| V. | : | Assign. Date: 1/12/2026 |
| | : | Description: COMPLAINT W/ARREST WARRANT |
| AVTANDIL KALANDADZE | : | |
| | : | **Filed Under Seal** |
| | : | |
| **Defendant.** | : | |

## ORDER

The United States has filed a motion to seal the above-captioned complaint and warrant and related documents, including the application and affidavit in support thereof and all attachments thereto and other related materials (collectively the "Arrest Warrant").

The Court finds that the United States has established that a compelling governmental interest exists to justify the requested sealing, and that there is reason to believe that disclosure of the Arrest Warrant would jeopardize the investigation by providing the subject of the investigation an opportunity to destroy evidence or flee, and jeopardize the investigation by disclosing the details of facts known to investigators, the identities of witnesses, and the investigative strategy.

IT IS FURTHER ORDERED that, notwithstanding this Order to Seal, the Government may disclose the Arrest Warrant to (1) appropriate U.S. and foreign law enforcement officials and other officials and personnel to the extent that such disclosure is in furtherance of national security or efforts to locate, arrest, detain, transfer, extradite, or expel the defendant, and (2) the court, court

officials, and defense counsel in this district or any other appropriate district as necessary to conduct any court proceedings in that district.

It is, therefore, this 12th day of January 2026,

ORDERED that the motion is hereby GRANTED, and that the Arrest Warrant, Complaint, Related Documents, the instant motion to seal, and this Order be SEALED until further order of the Court.

January 12, 2026

HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

U.S. District and Bankruptcy Courts
for the District of Columbia
A TRUE COPY
ANGELA D. CAESAR, Clerk
By Maricarmen Gino 1-13-2026
Deputy Clerk

2